Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EUGENE TRUE,<br><br>Plaintiff,<br><br>v.<br><br>ZENDESK, INC., MIKKEL SVANE, ARCHANA AGRAWAL, CARL BASS, MIKE CURTIS, MIKE FRANDSEN, BRANDON GAYLE, STEVE JOHNSON, HILARIE KOPLOW-MCADAMS, THOMAS SZKUTAK, and MICHELLE WILSON,<br><br>Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Eugene True ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Zendesk, Inc. ("Zendesk" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and

1

78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Zendesk and Momentive Global Inc. ("Momentive").

2. On December 6, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

3. The Registration Statement, which recommends that Zendesk shareholders vote in favor of, among other things, the issuance of Zendesk common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) Zendesk's and Momentive's financial projections; (ii) the financial analyses performed by Zendesk's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of Zendesk common stock.

10. Defendant Zendesk is a software development company that provides software as a service solutions for organizations worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "ZEN."

11. Defendant Mikkel Svane ("Svane") is Chief Executive Officer, Founder, and a director of the Company.

12. Defendant Archana Agrawal ("Agrawal") is a director of the Company.

13. Defendant Carl Bass ("Bass") is a director of the Company.

14. Defendant Mike Curtis ("Curtis") is a director of the Company.

15. Defendant Mike Frandsen ("Frandsen") is a director of the Company.

16. Defendant Brandon Gayle ("Gayle") is a director of the Company.

17. Defendant Steve Johnson ("Johnson") is a director of the Company.

18. Defendant Hilarie Koplow-McAdams ("Koplow-McAdams") is a director of the Company.

19. Defendant Thomas Szkutak ("Szkutak") is a director of the Company.

20. Defendant Michelle Wilson ("Wilson") is a director of the Company.

21. Defendants Svane, Agrawal, Bass, Curtis, Frandsen, Gayle, Johnson, Koplow-McAdams, Szkutak, and Wilson are collectively referred to herein as the "Individual Defendants."

22. Defendants Zendesk and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. On October 28, 2021, Zendesk and Momentive announced that they had entered into a definitive agreement under which Zendesk would acquire Momentive. The terms of the agreement provide for Momentive shareholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock. The press release announcing the Proposed Transaction states, in pertinent part:

**Zendesk to Acquire Momentive and Its Iconic SurveyMonkey Platform**

*Beloved customer service and customer feedback brands will create powerful new Customer Intelligence company that enables businesses to build more meaningful relationships*

*Combination expected to be growth accretive by 2023 and accelerate Zendesk's revenue plan to $3.5 billion in 2024*

October 28, 2021 04:38 PM Eastern Daylight Time

4

SAN FRANCISCO & SAN MATEO, Calif.--(BUSINESS WIRE)--Zendesk (NYSE: ZEN) and Momentive (NASDAQ: MNTV) have entered into a definitive agreement under which Zendesk will acquire Momentive, including its iconic SurveyMonkey platform. The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021.

* * *

**Transaction Terms**

Following a comprehensive review, the boards of directors of Zendesk and Momentive have approved the transaction.

The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021. Upon closing of the transaction, Zendesk stockholders will own approximately 78% of the combined company and Momentive stockholders will own approximately 22% of the combined company. The transaction, which is anticipated to close in the first half of 2022, is subject to approval by Zendesk stockholders and Momentive stockholders, the receipt of required regulatory approvals and other customary closing conditions. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

* * *

**Advisors**

Goldman Sachs & Co. LLC is serving as lead financial advisor and Centerview Partners LLC is also serving as financial advisor to Zendesk. Hogan Lovells US LLP is serving as legal counsel to Zendesk. Allen & Company LLC and J.P. Morgan Securities LLC are serving as equal lead financial advisors and Wilson Sonsini Goodrich & Rosati Professional Corporation is serving as legal counsel to Momentive.

**About Momentive**

Momentive (formerly SurveyMonkey) is a leader in agile experience management, delivering powerful, purpose-built solutions that bring together the best parts of humanity and technology to redefine AI. Momentive products, including

GetFeedback, SurveyMonkey, and its brand and market insights solutions, empower decision-makers at 345,000 organizations worldwide to shape exceptional experiences. More than 20 million active users rely on Momentive to fuel market insights, brand insights, employee experience, customer experience, and product experience. Ultimately, the company's vision is to raise the bar for human experiences by amplifying individual voices. Learn more at www.momentive.ai.

**About Zendesk**

Zendesk started the customer experience revolution in 2007 by enabling any business around the world to take their customer service online. Today, Zendesk is the champion of great service everywhere for everyone, and powers billions of conversations, connecting more than 100,000 brands with hundreds of millions of customers over telephony, chat, email, messaging, social channels, communities, review sites and help centers. Zendesk products are built with love to be loved. The company was conceived in Copenhagen, Denmark, built and grown in California, taken public in New York City, and today employs more than 5,000 people across the world. Learn more at www.zendesk.com.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

24. The Registration Statement omits and/or misrepresents material information concerning: (i) Zendesk's and Momentive's financial projections; (ii) the financial analyses performed by Zendesk's financial advisor, Goldman Sachs, in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

25. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Zendesk's Reasons for the Merger and Recommendation of the Zendesk Board of Directors; (ii) Opinion of Zendesk's Financial Advisor; (iii) Zendesk Unaudited Financial Projections; and (iv) Momentive Unaudited Financial Projections.

26. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure

of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Zendesk's and Momentive's Financial Projections**

27. The Registration Statement omits material information concerning Zendesk's and Momentive's financial projections.

28. With respect to Zendesk's and Momentive's financial projections, the Registration Statement fails to disclose: (1) all line items underlying such financial projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and Stock Issuance.

30. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or

released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Analyses

32. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Goldman Sachs.

33. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis—Zendesk Standalone*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.0% to 9.0%, (ii) multiples ranging from 30.0x to 40.0x, and (iii) perpetuity growth rates ranging from 3.7% to 6.5%; (2) the terminal values for Zendesk; (3) the amount of net cash of Zendesk as of September 30, 2021; (4) the Company's net operating losses; and (5) the number of fully diluted outstanding shares of Zendesk common stock.

34. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis—Combined Company*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.25% to 9.25%, (ii) multiples ranging from 27.5x to 37.5x, and (iii) perpetuity growth rates ranging from 3.6% to

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Dec. 30, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

6.6%, (2) the terminal values for the combined company; (3) the net cash of the combined company as of September 30, 2021; (4) the net operating losses of the combined company; (5) the number of fully diluted shares of Zendesk common stock estimated to be outstanding following consummation of the Proposed Transaction; (6) the number of fully diluted outstanding shares of Momentive common stock as of the last trading date; and (7) the number of fully diluted outstanding shares of Zendesk common stock as of the last trading date.

35. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price—Zendesk Standalone*": (1) the individual inputs and assumptions underlying the (i) multiples of 10.0x to 11.5x and of 0.40x to 0.45x, and (ii) illustrative discount rate of 8.1%; (2) Zendesk's forecasted net cash as of December 31 for each of the fiscal years 2022 to 2024; and (3) the number of projected year-end fully diluted outstanding shares of Zendesk common stock for each of the fiscal years 2022 to 2024.

36. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price—Combined Company*": (1) the individual inputs and assumptions underlying the (i) multiples of 9.75x to 11.50x and of 0.40x to 0.45x, and (ii) illustrative discount rate of 8.4%; (2) the combined company's forecasted net cash as of December 31 for each of the fiscal years 2022 to 2024; and (3) the number of projected year-end fully diluted shares of common stock of the combined company for each of the fiscal years 2022 to 2024.

37. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to Zendesk shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

38. Without the information described above, Zendesk shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

39. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

40. The Registration Statement provides the following concerning the management and Board of the combined company following the consummation of the Proposed Transaction:

> Following the consummation of the merger, all ten of the current members of the Zendesk board of directors are expected to continue as members of the board of directors of the combined company. Mikkel Svane, Zendesk's Chief Executive Officer and Chair of the Board of Directors, will serve as Chair of the Board of Directors of the combined company. In addition, Zendesk's executive officers are expected to continue to serve as the executive officers of the combined company.

41. The Registration Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

42. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

43. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

47. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 30, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*